## Insurance Company *versus* Connor.

1. A corporator in a Mutual Insurance Company, like a stranger, may enter into a contract of insurance with it, and his rights under the contract will be as fully protected as those of a stranger. The remedies existing at the time of the contract for enforcing it against him, are all that can be resorted to. The company have no right, without his assent, to impose any new condition, affecting the contract to his injury; or by a by-law, passed *after* the making of the contract, forfeit his rights under it.

2. A corporator in a fire insurance company effected an insurance on his individual property, and gave to the company a note for the amount of the premium for insurance. A by-law was subsequently passed at a meeting of managers, at which he was not present, which provided that if the interest on the said note be in arrear at any time for three months, " the policy shall be suspended and of no effect to make the company liable for loss until the interest be paid." Upwards of three years after the passage of the by-law, notice of it was given to him by a circular letter, and within thirty days after the notice his property was destroyed by fire; it was *Held,* that the company could not, by the passage of the by-law, without his consent, prevent his recovering on the policy: the only remedy of the corporation for the non-payment of the interest was to call in the principal sum: they had no power to forfeit his rights under the contract.

ERROR to the Common Pleas of *Northampton county.*

This was an amicable action in covenant, entered in the court below, between Cornelius Connor, as plaintiff, and The Fire Insurance Company of Northampton county, as defendant. The following case was stated for the opinion of the court:—

It is hereby agreed that the above action be entered in the Court of Common Pleas of Northampton county, as of August Term, A. D. 1849, and that the following case be stated therein for the opinion of the Court, viz.:—On the fifth of November, A. D. 1844, a policy of insurance was issued by the said The Fire Insurance Company of Northampton county, to Cornelius Connor, the plaintiff in this case, insuring certain buildings belonging to the said

[Insurance Co. *v.* Connor.]

Cornelius Connor, situated in the village of Mauch Chunk, in the county of Carbon, in this Commonwealth, viz.: $3500 on a certain tavern-house, designated as No. 1, and $1500 on a frame dwelling-house, designated as No. 2, which policy was signed by John Green, the president of the said company, and attested by H. D. Maxwell, the secretary of the same, and the seal of the said corporation was thereunto affixed.   It was also signed and sealed by the said Cornelius Connor, who thereby *became a member of the said company*, as by the said policy, a copy of which is hereunto annexed (which, with all its stipulations and covenants, is hereby made part of this case), appears prout the same.   At the time of executing the said policy of insurance, a note, whereof the annexed is a copy, was given by the said Cornelius Connor to the said The Fire Insurance Company of Northampton county, for the deposit money or premium required for the effecting the said insurance, viz. :—

$156.                                    *Easton, November* 5, 1844.

Six months after date, I promise to pay to The Fire Insurance Company of Northampton county, or its certain attorney, one hundred and fifty-six dollars, for value received, with interest.

No. 122.                                    CORNELIUS CONNOR.

Endorsed.—' Rec'd., Jan. 5, 1846, one year's interest.'

On this note no interest was paid but the one payment endorsed thereon, paid Jan. 5, 1846.

On the sixth day of August, A. D. 1830, at a general meeting of the members of the said company, they vested in the managers of the said company the power to pass all by-laws, rules, and regulations, necessary for the well government of the affairs of the said corporation.

On the fifteenth day of August, A. D. 1845, the managers of the said Fire Insurance Company passed the following by-law, viz. :—

" 9th. If a note be given for the deposit on any policies, and the interest thereof (to be paid semi-annually) be at any time three months in arrear, the policy shall be suspended and of no effect to make the company liable for loss until the interest be paid."

This by-law, with others adopted by the said managers at the same time, was approved at the next general meeting of the members of the said company.   Cornelius Connor was not present at either of these meetings.   After the destruction of the property of Messrs. Vansyckle and others, and shortly before the passage of this by-law, the Fire Insurance Company adopted a new form of policy, and after the passage of the said by-law, on the same sheet on which the policies were printed, this by-law, with the other by-laws, was printed, a copy of which said policy and the said by-laws is hereunto annexed and made part of this case.   On

[Insurance Co. *v.* Connor.]

the 14th of April, A. D. 1845, Cornelius Connor having been notified of the destruction of certain property in New Jersey, belonging to Samuel Vansyckle and others, paid to the agent of the said company at Mauch Chunk $17.16, his proportion of the said loss, which was subsequently remitted to and received by the treasurer of the said 'The Fire Insurance Company of Northampton county,' and on the 17th day of August, A. D. 1848, having been in like manner notified, there was paid to the treasurer for the said Cornelius Connor the sum of $15.60, the amount of his contribution to the loss occasioned by the destruction by fire of the property of Messrs. Wagner & Huber, in the borough of Allentown. On the 22d day of June, A. D. 1849, Cornelius Connor received by mail the circular, signed by the treasurer of the said company, of which the following is a copy:—

"(Circular.)    Office of The Fire Insurance Co. of Northampton county, Easton, June 21, 1849.

"Mr. Cornelius Connor, Sir:—The interest on your deposit-note is in arrear, as will be seen by the annexed statement. This interest should be punctually paid, and unless it be so done, the managers have instructed me to call in the notes of those who do not pay. By the annexed by-law you will see the importance of attending to the payment.

"9. If a note be given for the deposit on any policy, and the interest thereof (to be paid semi-annually) be at any time three months in arrear, the policy of insurance shall be suspended and of no effect to make the company liable for loss until the interest be paid.

Very respectfully yours,            H. D. Maxwell, Treas'r.
To 3½ years' interest, due May 5, 1849, $33.11."

Which circular is made part of this case, prout the same.

On the 15th of July, A. D. 1849, the buildings of the said Cornelius Connor, mentioned in the said policy, were destroyed by fire, and notice thereof given by him to the officers of the Fire Insurance Company. Several days after the fire and notice given, Lewis Menner, on behalf of the said Cornelius Conner, proffered to pay the arrearages of interest due on the said above-named note to the treasurer of the said company, who declined to receive the same.

The Act of Assembly incorporating the said company,—the said policy of insurance,—the said note,—circular,—by-law,— forms of new policy, are all made parts of this case.

If on this state of facts the court shall be of opinion that the plaintiff is entitled to recover from the said defendants the amount of the said insurance, then judgment to be entered in favor of the plaintiff—if not, then judgment to be entered in favour of defendants. This to be considered in the nature of a special verdict, and

either party to be at liberty to take a writ of error to the Supreme Court of this Commonwealth.

The court below, after argument, directed judgment to be entered in favor of the plaintiff. His Honor, JONES, J., filed an opinion, which was in part, as follows : —

" By effecting an insurance with a company constituted like the defendants, the insurer becomes a member of the corporation, and as such is presumed to know the terms on which he insured. But, although he becomes a member of the corporation by the act, the insurance, as between himself and the company, is a contract, no term of which can be altered save by the consent of the parties thereto ; his character as a party to the contract is not merged in his character as a member of the corporation. They are characters as independent of each other, and as distinct, as though they were different individuals. Hence no act of the corporation, whether it be expressly or only impliedly assented to by a member, as such, can be allowed to effect *a contract* of the corporation with that member :" 10 *Mass.* 384 ; 13 *Id.* 282.

" The power conferred upon the managers of the Mutual Insurance Company by the general meeting of the corporation of the 6th August, 1830, to ' pass all by-laws, rules, and regulations necessary for the well government of the affairs of the company,' does not, as we conceive, authorize the passage of any by-law to *have a retrospective operation upon* contracts of the company, such as the one before us. To bind Mr. Connor by the by-law of 15th August, 1848, No. 14, his consent, not as a corporator, but as a party to the contract of insurance, was necessary, and the power to pass the by-law no more reaches him in that latter character than does the by-law itself. In the case of Commonwealth *v.* Cain, 5 *Ser. & R.* 510, no contract existed ; it was a case between corporators as such.

" This by-law was passed in August, 1845, and if it was capable of being extended to the case of plaintiff against his consent as a contractor, it would bind him as a corporator whether he received notice of its passage or not—the assent, though absent when it passed the general meeting, would be presumed ; Stetson *v.* Kempton, 13 *Mass. R.* 282 ; and it would bind him from its passage. But in that case the company could not, as has been done here, ask contribution to losses from the plaintiff, upon the footing of the policy or contract, and then deny its liabilities to make good the losses against which it had insured him, upon the footing of the by-law. If Mr. Connor was bound by that by-law, he was bound from its passage, and not from the date when he received notice of its passage *three years afterwards*, having in the meanwhile performed every duty to the company which his contract with them required at his hands.

" Let judgment be entered in favor of the plaintiff."

[Insurance Co. *v.* Connor.]

It was assigned for error,

1. The Court erred in directing that judgment should be entered in favor of the plaintiff; they should have directed the judgment to be entered in favor of the defendant below.

2. The Court erred in deciding that Cornelius Connor was not bound by the by-law of the 15th of August, 1845.

*Maxwell,* for plaintiff in error.

The contract was qualified by the provisions of the charter and the terms of the policy, and defendant gave his assent to the by-law by not dissenting after notice: *Story on Contracts,* sec. 379.

All contracts are subject to the constitutions, statutes, and common law where made; and the contract of a corporator with the corporation is subject to its reasonable by-laws: 12 *Wheaton* 259; *Id.* 337; *Angel & Ames on Cor.* 193–200; 4 *Term. Rep.* 794; 8 *Id.* 352.

*Brown,* contrà.—Although the plaintiff below became a member of the corporation, he was not thereby debarred from entering into *a contract* with it; and the company, without his assent, had no right to vary this contract to his injury: 3 *Metcalf* 44; 6 *Cranch* 87. Connor paid his contributions for losses, and was not in default except in the matter of interest, which, from the case stated, does not appear to have been demanded, and of the penalty for non-payment of which he does not appear to have received any notice until the 21st June, 1849, twenty-two days before his property was destroyed by fire. He was not then in arrear for three months after the notice. Cases depending on the right of eminent domain do not apply to this case.

The *constructive* assent by a corporator to the by-laws on the principle that all are presumed to assent to what is done at a regular meeting, is not to be permitted to deprive one of his right, as the presumption is that corporations will not pass any but lawful regulations; and to such only is the assent of one absent to be presumed: 13 *Mass.* 282; *Angel & Ames on Corp.* (3d *Edition*) 338; 4 *Cowen* 358, *id.* 382; 4 *Dessaussure Rep.* 578.

*Porter* in reply.—All members of a corporation submit themselves to all *reasonable by-laws: Wilcox on Corp.* 105, sec. 245. The cases cited do not sustain the position that a by-law imposing new conditions, is void; the rule is, that where acts transcend the charter, they are void: YATES, J., in Burr *v.* Spencer, 3 *Burr.* 1839; 5 *Ser. & R.* 510, Com. *v.* Cain.

Though a by-law is not to affect *past transactions,* such was not the case in this instance; it merely provided a rule in regard to the non payment of interest after the passage of the by-law. The by-law was passed 15th August, 1845; one year's interest on the note was due on 5th November, 1845; and that year's interest was paid on 5th January, 1846, within three months after the first in-

terest became due, subsequent to the by-law; the interest unpaid, and for which he was in default, became due after the passage of the by-law. The operation of the by-law was, therefore, in this case, entirely prospective. The interest in arrear *commenced* to accrue on 5th November, 1845.

The case in 7 *Hill* 49, was referred to as in point.

The opinion of the court was delivered December 29, 1851, by

LEWIS, J.—On the 5th November, 1844, a policy was executed by the parties, by which the buildings of the plaintiff below were insured. The policy acknowledged the payment of the premium, but, on the day of its date, the insured gave his note, payable at six months, with interest, which is stated on the record to have been given for the premium. At the time of executing these instruments a by-law existed (a copy of which was annexed to the policy) by which the treasurer was authorized to enforce the payment of interest on all moneys invested, by calling in the principal sum, in case the interest was not paid within ten days after it became due. On the 15th August, 1845, nine months after the contract of insurance was entered into, the corporation adopted a by-law, declaring, that "if a note be given for the deposit on any policy, and the interest thereof (to be paid semi-annually) be at any time three months in arrear, the policy shall be suspended, and of no effect to make the company liable for loss until the interest be paid." On the 22d June, 1849, Cornelius Connor received notice of this by-law; and on the 15th July, 1849 (the interest on the note being more than three months in arrear), the buildings insured were destroyed by fire.

According to our construction of the by-law, it is prospective in its terms. If a retrospective operation be allowed to the words "*if a note be given*," we see no reason why a similar construction should not be given to the words which immediately succeed, "*and the interest be three months in arrear*." The result would be that instead of a by-law, a rule *prescribed* to regulate *future* conduct, we have an *adjudication*, without trial or notice, by which the rights of the party under his covenant are decreed to be forfeited for an omission, not in violation of any by-law in existence when it was made. Such a decree would be against the plain principles of justice. But the rule is that a statute shall not be construed to have a retro-active effect, unless that intent be expressed by the lawgiver. No such intention is expressed in the by-law, and our construction restricts its operation to notes given and contracts made after its enactment.

But as those who enacted the by-law give it a different interpretion, and claim the power to pass by-laws affecting contracts previously made, it is proper to state our opinion on this question also. Corporations are the creations of the law, and possess only

[Insurance Co. *v.* Connor.]

such powers as are specifically granted, or are necessary to carry into effect the powers thus granted. In general, acts of incorporation are designed to give them only the like capacity to act, in respect to the particular objects for which they are created, that natural persons possess in respect to their own affairs. A corporation has no power to invade the rights of individuals. A by-law, when used for this purpose, is totally misapplied. The design is to regulate the government of the corporation, not to operate upon or affect injuriously the rights of strangers. A mutual insurance company differs from other insurance companies in this, that the person insured participates in the profits and losses. These rights and liabilities have respect to his corporate privileges, and a reasonable by-law regulating them might be free from objection. But in addition to his rights and duties as a corporator, Cornelius Connor stands before us as a party to a covenant executed by himself on the one part, and by the insurance company under its corporate seal on the other. His rights under that covenant are as fully protected by law from the corporate action of the company as if he were a stranger. It affects not his rights under that contract, that by virtue of it he becomes a member of the company, and, as such, subject to liabilities and entitled to privileges. This is an incident of the contract of insurance which may subject his corporate rights to the authority of the corporation; but his rights as a party insured stand entirely free from such control. If he neglected to pay the interest on his note, the remedy provided was to call in the principal. Poverty, accident, illness, and various circumstances beyond his control, may prevent the payment of interest without any wilful default. Under such circumstances the remedies existing at the time of the contract, or such as the law may provide for enforcing the payment, are all that can be resorted to. The soundness of this position may not readily be perceived, because corporate action assimilates in form to the action of sovereignties, and the aggregation of intelligence and influence which exists in such cases, creates habits of thought, and, in practice, produces a power which tends to obscure the sense of right and equality. But an individual has an equal right with a corporation to adopt rules of action for his own government, whether those rules are denominated regulations or by-laws. If Cornelius Connor had adopted a rule suspending the obligation of his own note for the premium in case the company failed to comply with some new condition which formed no part of the original contract, his pretensions would strike the mind as remarkable for something more than their injustice. The pretensions of the plaintiff in error stand on no better foundation.

The purchase of a freehold estate within a certain locality, or the loan of a sum of money on mortgage, under certain charter regulations, confers the privileges of membership, and secures the

right to vote at municipal elections in the one case, and to hold stock in the other, in proportion to the amount of the loan. The holder's privileges, as a corporator, might be subject to the reasonable control of the corporation; but no general authority to pass by-laws for its good government could confer the right to deprive the party of his freehold, or to impair the obligation of his mortgage.

What security is there in a policy of insurance which is liable to be declared forfeited by one party without the consent of the other? The chances of indemnity against loss would scarcely be diminished by such an uncertain provision. If this be established as the law which is to govern contracts with mutual insurance companies, it will be destructive of all business transactions with them. Its tendency would be to defeat the chief object of the party who effects an insurance. The recognition of the power claimed in this case by the plaintiff in error would be injurious to the interests of insurance companies, contrary to the principles upon which they are founded, and dangerous to the just and equal rights of the citizen.

It is the opinion of the court that the forfeiture of Cornelius Connor's rights, under his covenant of insurance, upon the ground assigned in this case, is unreasonable and oppressive, and is a penalty which, it is clear, the other party to the contract has no right to impose.

Judgment affirmed.