Opinion by
Head, J.,
In this action the plaintiff bases his right to recover on a written contract or certificate dated May 12, 1892. The due execution and delivery of the contract are not denied nor is it alleged that the plaintiff has failed, in any respect, to discharge every obligation imposed on him therein or thereby. The defendant is a beneficial society or fraternal union and was duly incorporated on April 13,1892, for the purpose of maintaining “a society for the payment of periodical benefits to its members in the cases of sickness or disability, from funds contributed by the members; and also from funds contributed in like manner to pay benefits to those who have been members for a continuous fixed period, and to pay benefits to heirs of deceased members.”
The constitution and by-laws duly adopted by the corporation provide for four classes of beneficiaries, the members of each class receiving pecuniary benefits for the same causes and *146 under like conditions, but the maximum amount of such benefits varied from $400 in the lowest to $1,000 in the highest class. The assessment to be paid likewise ranged from $1.00 to $2.50. The plaintiff entered the highest class, and received a certificate in which the defendant stipulates, inter alia, as follows: “ Sixth: In case the said member shall continue to pay all assessments, dues and demands, which may be legally made against him or this certificate, for the full term of ten years and ninety days , from its date, and shall in all particulars maintain himself in good standing in the Union, then the said member shall be entitled to a sum not exceeding the principal amount named herein, less the amounts he has already received as benefits from the Union, on account of sickness or other disability, or otherwise, with accumulated interest from date of said payment to date of expiration of certificate at six per cent per annum.” One-half of the entire revenue of the association, all of which was to be derived from the assessments paid in by the members, was set apart in a special fund called the “reserve fund,” to be invested, which, with its accumulations, was to provide for the payment of such benefits above described as might mature under the terms of the certificate quoted.
The plaintiff, as already stated, having complied with every obligation imposed on him by the terms of his certificate for the full period of ten years and ninety days, demanded the benefits secured to him thereby, and his deihand being refused, brought tins action. The association resists the payment of the full amount that would admittedly be due, according to the plain terms of the contract as it was actually executed, on the ground, first: that by an amendment to the constitution and by-laws of the society adopted in 1894, about two years after the date of the plaintiff’s certificate, its liability under such certificate was so changed and reduced that it would amount to but $390. It was not alleged that the plaintiff, as one of two parties to a contract, ever assented to such change, but it is contended that as the amendment was regularly adopted in the manner provided by the original constitution, it became binding on the plaintiff as well -as every other member of the society. And this contention is especially urged *147 because the application made by the plaintiff, on which his certificate issued, contained the following stipulation, viz: “I agree, if accepted, to faithfully abide by all the laws, rules and regulations of the Supreme District, of this or any other District of which I may become a member, and all additional laws and amendments that may hereafter be enacted by the supreme or said district of the Union.”
It must be conceded that the defendant, like every other corporation, possessed the inherent power of self government. Its by-laws are the channels through which this power is exerted and declare the corporate will as to the manner in which the corporate functions are to be exercised and such other mátters as to which it may properly and lawfully legislate. Of course the power to make such laws carries with it the power to alter and amend them in the manner prescribed. Voluntary acceptance of membership in such corporation necessarily involves and implies the assent of each member to every amendment to the by-laws the substance of which is the proper subject of such law, and which has been formally and regularly adopted. It is difficult to see how an express declaration by an applicant of his willingness to be bound by existing by-laws and future amendments thereto can add anything to the like obligation necessarily assumed in the act of becoming a member.
But such a corporation also has the power to enter into contracts in furtherance of the objects for which it was created and it may lawfully assume such contractual relations with one of its members as well as with a stranger. With the' issue of the certificate on which this action is founded the defendant society undoubtedly entered into a contract to which the plaintiff became the other contracting party. That the defendant society, in the exercise of its undoubted right to amend its own by-laws, could, without the assent of the plaintiff, lessen its contractual obligation thus assumed, we are not asked to say. But it is urged upon us that the plaintiff, by virtue of the stipulation quoted from his application, did in fact assent, not only to the amendment of 1894, but to any other like ones that might be'adopted during the life of his certificate; so that such amendments, even if they finally resulted in extinguishing *148 entirely the defendant’s liability, must be held to relate back to and be read into the original contract. The intrinsic importance of the question under existing conditiqns and the frequency with which it is urged upon courts seem to demand a somewhat elaborate discussion of it.
Of course it must be conceded that the parties to a forward contract may agree therein that one of them could, thereafter, at pleasure, modify its terms, reduce its obligations or cancel it altogether, even after it had been partially performed by the other. But surely a court would incline to such a construction of a contract, giving to one party such an advantage over the other, only when impelled to do so by the presence, in the contract itself, of language unmistakably evincing the consent of the latter to the inequality that would follow. Words of merely doubtful import or expressions indicative as well of some different intent would not suffice to support such a construction. Can we then fairly conclude that because this plaintiff expressed his willingness to abide by the by-laws existing when his contract was made and the amendments thereto that might subsequently be adopted, he intended to agree that, after he had partially performed, the defendant could, at its pleasure, or as often as it deemed its welfare would •be promoted thereby, adopt an amendment to its by-laws reducing the amount secured to the plaintiff by his contract and hold him bound thereby? The answer to this question is enveloped in some obscurity because the decisions of the courts of the different states on the subject are not in harmony. But, after a somewhat exhaustive review of them, we are led to the conclusion that if we follow the sounder reasoning and more •potent authority we must answer the question in the negative. This results in the first place from a consideration of the nature and character of a by-law. This term has been often defined “A by-law is a rule or law adopted by a corporation or association for the regulation of its own action and concerns, and of the rights and duties of its members among themselves.” Am. & Eng. Ency. of Law, Yol. 5, p. 87. This term (by-law) has a peculiar and limited signification, being used to designate the orders and regulations which a corporation, as one of its legal *149 incidents, has power to make, and which is usually exercised to regulate its own action and concerns, and the rights and duties of its members amongst themselves.” Per Shaw, C. J., in Com. v. Turner, 55 Mass. 493. In Insurance Co. v. Connor, 17 Pa. 136, Lewis, J., said: “A corporation has no power to invade the rights of individuals. A by-law when used for this purpose is totally misapplied. The design is to regulate the government of the corporation, not to operate on or affect injuriously the rights of strangers. . . . But in addition to his rights and duties as a corporator, Cornelius Connor stands before us as a party to a covenant executed by himself on the one part and the insurance company (mutual) under its corporate seal on the other. His rights under that covenant are as fully protected by law from the corporate action of the company as if he were a stranger. It affects not his rights under that contract, that by virtue of it, he becomes a member of the company, and, as such, subject,” etc. Interpreting then the language of the application, in the light of the foregoing authorities, and giving to the expressions “laws, rules and regulations” the normal significance that the law gives to them, we may readily conclude that the contract exhibits no clear and unequivocal consent of the plaintiff to the exercise of any such power, by the defendant, as would be manifested by the enforcement of the amendment of 1894.
Again the by-laws, rules and regulations of a corporation or society are essentially legislative in their character. Like all other legislative acts they are affected by the presumption that they áre never intended to be retroactive unless such intent be clearly expressed. “A member may know that certain amendments to the by-laws have been passed, or he may even vote for them, but it does not follow from this that he consents that they may have a retroactive force, and may modify a contract which he holds with the society.” Niblack on Benef. Soc. 61. This principle is strongly stated in Indemnity Co. v. Jarman (U. S. Circuit Court of Appeals), 104 Fed. Repr. 638, and indeed is so universally recognized that a citation of authorities to support it is needless. In the present case the amendment of 1894 contains no language necessarily indica *150 tive of an intent to make it retroactive and this, coupled with the fact that the record discloses no effort on the part of the society to take up and reform its outstanding contracts, and not even a notice to the holders thereof that their certificates had been materially modified, affords, we think, ample warrant for the conclusion that the amendment should be regarded as prospective only.
Furthermore it seems unreasonable to draw, from the general terms of the application, the conclusion that the plaintiff, having the option to purchase indemnity in any one of four classes, selected that one apparently securing to him the largest fund at the end of ten years and obligating him to pay the highest assessment, and at the same moment and in the same act deliberately consented that the society might, at any time before the actual maturity of his certificate, reduce the amount thereof ter any extent it might deem advisable.
Finally, we conclude that the position of the present plaintiff is supported by the clear weight of authority. In Indemnity Co. v. Jarman, supra, a case in which the application contained language precisely similar to the one now before us, the court said: “ In the second place, we observe that it is not a reasonable interpretation of the clause above quoted from the application that the applicant intended in advance to assent to any changes in its constitution and by-laws which the company saw fit to make, even if they reduced the amount of indemnity which the company had promised to pay in the event of his death, and thereby lessened the value of hi's policy. He was to occupy a dual relation to the company — first as one of its members, and second, as any other individual having a contract with it,” etc. Many cases are cited supporting the conclusion there reached.
In Newhall v. Legion of Honor, 181 Mass. 111, Holmes, C. J., construing an express stipulation that the member should comply with all by-laws “now existing or hereafter adopted,” said: “But the plaintiff’s rights do not stand on the by-laws alone. They stand also upon express contract. . . . Compliance in this connection means doing what the by-laws may require'the member to' do, not submission to seeing his only inducement to do it destroyed. . . . Whatever compliance with the by *151 laws may be construed to mean, it does not mean absolute submission to whatever may be enacted in good faith, and it does not extend to permitting a direct deduction from the sum which, on the face of the certificate, any ordinary man would be led to suppose secure.”
In Hale v. Equitable Aid Union, 168 Pa. 377, the exact question came before our own Supreme Court. In her. application the plaintiff there had declared, “I further agree to accept said beneficiary certificate subject to such laws, rules and regulations as now exist or may hereafter be adopted,” etc. By an amendment to the by-laws adopted some years after the issue of her certificate the society undertook, not indeed to reduce the sum secured to her in her contract, but to change the times and terms of payment. The court declared that such an amendment could not in any way affect her rights under her contract, and expressly adopted and approved the following language used by the trial court, vizA contract between an association, such as the defendant, and one of its members cannot be impaired or altered by either of the parties thereto, except so far as the power to do so is reserved. The benefit certificate was accepted by plaintiff, subject to the right of the corporation to amend its by-laws and to change the contract in so far as the by-laws make it, but not in-so far as the contract is made by the benefit certificate itself.” In the case now before us the whole of the contract on which the plaintiff sues is contained in the certificate itself. It needs not the aid of any by-law to support it. The case just cited must therefore be decisive of the question we have been considering. It has been recognized as the settled law of this state by the U. S. Circuit Court of Appeals for the Eastern District of Pennsylvania in Legion of Honor v. Getz, 112 Fed. Repr. 119, in which the precise question here involved was disposed of in harmony with and on the authority of Hale v. Equitable Aid Union. But, it is argued, the binding force of that decision has been weakened by the later utterance of the same court in Chambers v. Knights of Maccabees, 200 Pa. 244. We do not think so. In the later case the opinion of the lower court, adopted by the Supreme Court, declares that the case is *152 distinguishable from and not intended to affect the decision in the Hale case. And the cases do differ in this important particular. In the Chambers case there was in existence, at the time the certificate issued, a by-law avoiding the contract if the member committed suicide within one year. He was affected with notice of this and his contract in this respect appeared only in the by-laws and not in his certificate. The company could amend such a by-law and extend its time limit and to this extent modify the original contract in so far as it was made by the by-laws. And especially so as the law was aimed not at a reduction of the company’s liability, but at the manner in which the member must act or refrain from acting. The law as declared in the Hale case must still be held to be the law of the present one. The plaintiff’s contract must, therefore, be construed as if the amendment of 1894 had never been passed, and there seems to be no dispute between the parties that the amount due thereunder, if the contract as it was executed can be enforced, is $1,000 and interest.
But payment of this sum is further resisted by the defendant for the reason that “the certificate, at the time of its issuance and until May 25,1893, the time when the defendant corporation accepted the provisions of the Act of April 6,1893, P. L. 10, was null and void and of no effect, the issuance of the same by the defendant corporation being forbidden by law.” This contention is based on the proposition that the contract evidenced by the certificate in this case, was, in essence and substance, a contract of insurance, and that by the Act of April 4, 1873, P. L. 20, entitled “An Act to establish an Insurance Department,” it was made “unlawful for any person, company or corporation to negotiate, any contract of insurance, or to effect an insurance .... without complying fully with the provisions of this (said) act.” To allege that the defendant, a beneficial society, may not lawfully engage in the business of insurance, is only another way of stating >the general proposition that every corporation must confine its operations within the limits of the purposes for which it was created. But to assert that the defendant has no power to enter into a contract, which, if made by an insurance company, could be properly designated a con *153 tract of insurance, seems to me to raise quite a different question. Our legislature in the Act of April 29, 1874, P. L. 73, has expressly authorized the creation of corporations for “the maintenance of a society for beneficial or protective purposes to its members from funds collected therein,” as well as insurance companies. But it placed a beneficial society in the first of the two great classes into which all corporations are divided, viz.: a corporation not for profit, whilst the insurance company is ranked in the second class; thus declaring that herein is to be found the true distinction between them, that by this sign ye shall know them. That there is a more or less marked similarity in the commercial aspects of the business which both a beneficial society and an insurance company must of necessity conduct, in order that the one may distribute its benefits, the other pay its indemnity following the sickness, injury, death or other contingency, upon the happening of which the benefit or indemnity becomes payable, furnishes no warrant for the conclusion that either corporation is wrongfully engaged in the transaction of business which the other alone could lawfully conduct. This distinction between the character and operations of a beneficial society and the similar but yet fundamentally different ones of an insurance company has been clearly pointed out by Mr. Justice Clark in Com. v. Equitable Ben. Assn., 137 Pa. 412, thus: “To grant indemnity or security against loss, for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance. What is known as a beneficial association, however, has a wholly different object and purpose in view. . . . The benefits, although secured by contract, and for that reason to a limited extent assimilated to the proceeds of insurance, are not so considered. . . . Such societies have no capital stock. They yield no profit, and their contracts, although beneficial and protective, altogether exclude the idea of insurance, or indemnity, or of security against loss. There were many of these societies in existence at the time of the passage of the act of 1874 in this state; the character of their business was a matter of common knowledge, and it was doubtless to societies of this character the ninth clause of *154 the second section of the act of 1874 was intended to apply.” This language has been adopted and approved in many later cases: Fischer v. Legion of Honor, 168 Pa. 279; Dickinson v. A. O. U. W., 159 Pa. 258; Algeo v. Fries, 27 Pa. Superior Ct. 157; Lithgow v. Knights of Maccabees, 165 Pa. 292, in which it was held “the certificate of membership of a beneficial association is not an insurance policy within the meaning of the Act of May 11, 1881, P. L. 20.”
Whilst, therefore, it cannot be denied that, in many practical aspects, the work of a beneficial society, engaged in “protecting” its members from the injurious consequences of some of the ills that befall suffering humanity, closely resembles that of an insurance company “indemnifying” against the same consequences, yet, in the eye of law, the two bodies are fundamentally different, and there is abundant reason for holding, under the cases cited, that the certificate of the plaintiff in this case was not an insurance policy or a contract of insurance within the meaning of the act of 1873. It was not, therefore, forbidden by that act, which intended only to deal with the business of insurance, technically so known and called, but was a valid contract expressly authorized by the very terms of defendant’s charter.
It is true that the legislature, in 1893, enacted a general law “regulating the organization and incorporation of secret fraternal beneficial societies .... and protecting the rights of members therein.” We cannot discover, either in its title or the preamble reciting the mischief it designed to cure, any evidence that this act intended to authorize beneficial societies to become insurance companies, or to conduct the business of insurance. It did not deal with the business of insurance or legislate for companies engaged in it. The two classes of companies remained as distinct after the passage of that act as before it. Whilst it permitted any beneficial society theretofore incorporated to bring itself within the provisions of the act by filing a formal declaration of its acceptance thereof, it was in no sense retroactive. So much has been expressly decided. Wolpert v. Grand Lodge, 2 Pa. Superior Ct. 564; Thomeuf v. Knights of Birmingham, 12 Pa. Superior Ct. 195. *155 Neither the act itself nor the subsequent acceptance of its provisions by the defendant, affected or in anywise impaired the obligation of the plaintiff’s contract entered into before the passage of the act.
We think, therefore, the learned trial court should have affirmed the plaintiff’s first point and directed the entry of judgment for $1,000 with interest from August 12,1902.
Judgment reversed and a venire facias de novo awarded.