AMOS S. CALHOON, RESPONDENT, v. BROTHERHOOD'S RELIEF & COMPENSATION FUND, INC., A CORPORATION, APPELLANT.—135 S. W. (2d) 1096.

Kansas City Court of Appeals. January 8, 1940.

*Samuel D. Newkirk* and *Robert E. Coleberd* for appellant.

*Michaels, Blackmar, Newkirk, Eager & Swanson* of counsel.

*Hill & Riederer* for respondent.

SHAIN, P. J.—Appeal from the Jackson County Circuit Court. The plaintiff in this case alleges himself to be a beneficial member of the defendant corporation. The plaintiff alleges that the defendant corporation "was at all times herein mentioned engaged in the business of establishing and managing a fund for the payment of sums of money to its members, including this plaintiff, in the amounts and upon the contingencies hereinafter more particularly set out, and that in the carrying on of its said business the defendant issues contracts of insurance to its members whereby said members are insured against loss of their positions because of physical disability, as described in article 12, section 4, of the by-laws of said defendant, as follows:

## "ARTICLE XII

### "BENEFITS

"Section 4. Any member of this organization, after eighteen (18) months' continuous membership and in good and regular standing shall be eligible for benefits at the rate of Tewenty-five (25) cents for each member of this organization in good and regular standing, not to exceed however, the amount of Seven Hundred and Fifty ($750) Dollars, payable in a lump sum for 'loss of position,' as hereinafter defined, because of physical disability."

Plaintiff alleges defendant had its principal office in Pennsylvania, and solicits, issues and delivers policies of insurance in Missouri, and hires and maintains agents in Missouri who solicit members, collect dues and investigate, report and assist in settlement and adjustment of claims.

Plaintiff alleges membership of over eighteen months and alleges issuance of card of membership on March 31, 1924. Plaintiff further alleges that on the aforesaid date he was under the age of forty-eight, and had regular employment as member of a switching crew for the Missouri Pacific Railroad Company at Kansas City, Missouri, "and that he was free from any disease, ailment or physical defect known to him which, if known by his employer, might cause the loss of his position."

The plaintiff pleads all requisites of payment of all assessments and dues requisite to participation in funds from the twenty-five cent assessments, not to exceed $750 for 'loss of position' allowed for physical disability."

Plaintiff further pleads "that on or about the tenth day of March, 1934, while he was employed in the transportation department as switchman for the Missouri Pacific Railroad Company, and was so engaged in the actual, customary, authorized and routine duties of his employment, for which he was receiving the usual stipulated compensation, he suffered a serious and permanent injury to his back and spine and that the said injury rendered this plaintiff physically unable to resume or continue his said employment from and after the 31st day of May, 1934. Plaintiff alleges that by reason of his said injury, received as aforesaid, and as a direct result thereof, that he was thereafter discharged from and entirely and permanently relieved of his employment by his employer and that he thereby became entitled to the benefits set out in article 12, section 4 of the by-laws of the defendant organization, which are set out above."

The plaintiff pleads further provision of the constitution and by-laws, as follows:

"ARTICLE XI

"Section 1. (b) The term 'loss of position,' as used in this Constitution, shall also include all cases where the employee of a Transportation Department while in the actual, customary, authorized and routine performance of the duties of his employment for which he is receiving the usual and stipulated compensation for such authorized services, is physically disabled, not however, due to any wilful, or intentional violation or infraction of any rule or rules, regulation or regulations, of his employer or any Federal or State Law now in force or hereafter enacted, and has been discharged from or entirely and permanently relieved of employment by his employer, because of such physical disability."

Judgment of $750 together with interest is asked.

The defendant in its answer alleges itself to be a voluntary association of Pennsylvania, and organized under and by virtue of the law of that commonwealth providing for mintenance of a society for beneficial and protective purposes to its members from funds collected therein, and further pleads that the society was not organized for profit and that it has no capital stock. The defendant further answering states that its place of business is in Harrisburg, Pennsylvania, where its books are kept and where all dues are made payable. Defendant further alleges that it has at no time had an office or officer in the State of Missouri, and that it is not transacting business in Missouri. Defendant alleges itself as a beneficial society comprised of members who are governed by its constitution which is amended from time to time, and that its last constitution became effective January 1, 1932.

The defendant makes general denial as to all allegations in plaintiff's petition, and thereafter pleads as follows:

"Defendant states that prior to the time plaintiff was admitted to membership in defendant, plaintiff filed in the office of defendant in Harrisburg, Pennsylvania, his written application for membership, and in said application plaintiff agreed that he would be bound by all regulations of the defendant; that at the time said application was made the plaintiff was a resident of and employed in the State of Florida; that said application was examined by the defendant's authorized officers at Harrisburg, Pennsylvania, upon the receipt of the same, and that the defendant, relying upon the statements and representations made by plaintiff in said written application, approved the said application at Harrisburg, Pennsylvania, on or about March 31, 1924, and admitted plaintiff to membership as of said last mentioned date."

Defendant, further answering, pleads in detail nine articles of the defendant's Constitution. As the contents of some of these articles are not directly germane to the issue, we refrain from setting them all out in full. Article VII is as follows, to-wit:

## "Article VII

### "Dues

"Section 1. The dues of this Organization shall be Two ($2.00) Dollars per month and must be paid in advance, before or during the current calendar month, at the principal office of this Organization, or at such other place requested by the majority of the members of any duly designated administrative district or region for their convenience and approved by the Board of Directors, before the member shall be eligible for or entitled to any benefits whatsoever during the succeeding calendar month.

"Section 2. Any member of this Organization failing to pay his monthly dues for the current calendar month, before or during the preceding calendar month, may be carried on the membership roll for the current calendar month, within which the said member shall pay his dues in arrears, but, he shall not be eligible for or entitled to any benefits whatsoever during the current calendar month.

"Section 3. If the said member shall not pay the monthly dues in arrears during the current calendar month, he shall stand on the last day of the current calendar month expelled from this Organization and forfeited of all benefits, privileges, rights and equities arising therefrom, without any further notice thereof whatsoever."

As to the other articles pled, we will note briefly the provisions of same that are urged in the briefs. The defendant further answers by alleging non-payment of the $2 per month dues for more than eleven months prior to date of his alleged injury, and that plaintiff by reason thereof had been expelled and, therefore, was not entitled to any benefits. Further, defendant alleges as follows:

"That plaintiff did not sustain any injury or physical disability

mentioned in said paragraph (b), and did not lose his position nor was he held out of service by reason of any such injury or physical disability, and at the time plaintiff claims to have been injured and at the time he claims to have lost his position he was not in good and regular standing as a member of defendant.''

Defendant pleads further that, ''The decision of the International President and International Secretary-Treasurer therein shall be final, binding and conclusive, unless appealed to the Board of Directors, by filing with the International President a written notice of such appeal, within fifteen (15) days after notice of the decision therein.''

Defendant alleges that the constitution provides that before any resort to court, a member must exhaust his rights within the society. Defendant pleads the law of the society as to the only place of payment of benefits being at the principal office of the organization. Section 8 of article XVI is pled as follows:

''8. Defendant states that the rights of the plaintiff, if any he had, and his duties and obligations and the interpretation of defendant's constitution are governed and determined by the laws of the Commonwealth of Pennsylvania; that the Supreme Court of Pennsylvania is an appellate court of last resort having exclusive jurisdiction in said State in all civil cases wherein the amount involved exceeds $2500, and the Superior Court of Pennsylvania is an appellate court of last resort having exclusive appellate jurisdiction in all civil cases involving not more than $2500; that it is the law of the Commonwealth of Pennsylvania as determined by said courts in the following decisions printed and published under the laws of said State that a beneficial society or association organized or created under or pursuant to the statutes of Pennsylvania of 1874 above referred to, is not an insurance company, that its contracts with its members are not insurance policies or insurance contracts.''

Defendant pleads that the law of Pennsylvania is the law of this case, and cites specific opinions of the appellate courts of that State as controlling.

Defendant's answer further states that the law of the State of Florida, where the defendant resided at the time he was accepted as a member, is the same as that of Pennsylvania and cites authority.

Defendant by way of answer further states:

''9. That the plaintiff, having failed to conform to and comply with the provisions of defendant's constitution, and having failed to pursue the methods and first exhaust the remedies provided in defendant's constitution, is not entitled to recover in this suit.''

A trial was had before jury; jury verdict was for plaintiff in the sum of $871.88; and judgment was had and entered in accordance with verdict and defendant duly appealed therefrom.

## Opinion.

Defendant makes assignments of error, to-wit: Refusing of demurrer, giving of Instruction No. 1 for plaintiff, and giving of Instruction No. 2 for plaintiff.

Defendant urges its contention as to its rights for demurrer on two grounds, to-wit: First, upon the ground that beneficial dues were not paid prior to the month of injury, as per provision of article VII, *supra.* Second, defendant classifies itself as a mutual benefit society of international scope, incorporated under the laws of the State of Pennsylvania and operating alone under such laws in said State, and that its contract is not an insurance contract. Further, defendant urges that there is not evidence in support of conditions for recovery, in that there was no evidence of notification in writing to International President, furnishing affidavit setting forth causes of loss of position within ten days as required by the laws of the society.

A review of this cause necessitates consideration and conclusion as to defendant's claim that its contract with plaintiff is governed by the laws of Pennsylvania.

An examination of defendant's brief discloses that the only Pennsylvania cases cited are under its point No. (1) (b). Under points Nos. (2) and (3), all citations are Missouri cases except one case, and that one exception is an Illinois case. We have carefully read all of the Pennsylvania opinions cited and conclude that none are directed to the vital issues in the case at bar.

On the question of by-laws, Hays v. German Ben. Union, 35 Pa. Sup. 142, is cited by defendant. This opinion discusses amendments of the by-laws and the conclusions as to amendments being prospective and not retroactive and conforms to the opinion in Green v. Security Mut. Life Assn. (Mo. App.), 140 S. W. 325, which is cited by defendant. It follows that as to such point, it is immaterial as to whether the Pennsylvania or Missouri decision be followed.

In the German case, *supra,* the Pennsylvania courts make distinction between insurance for profit and beneficial societies not organized for profit and operating from funds collected from within, as follows:

"Whilst, therefore, it cannot be denied that, in many practical aspects, the work of a beneficial society, engaged in 'protecting' its members from the injurious consequences of some of the ills that befall suffering humanity, closely resembles that of an insurance company 'indemnifying' against the same consequences, yet, in the eye of law, the two bodies are fundamentally different, and there is abundant reason for holding, under the cases cited, that the certificate of the plaintiff in this case was not an insurance policy or a contract of insurance within the meaning of the act of 1873. It was not, therefore, forbidden by that act, which intended only to deal with the

business of insurance, technically so known and called, but was a valid contract expressly authorized by the very terms of defendant's charter.''

In the Hayes case, *supra,* the plaintiff is seeking to recover upon his contract with the society. The above opinion quotes with approval from Insurance Co. v. Connor, 17 Pa. 136, as follows:

'' 'A corporation has no power to invade the rights of individuals. A by-law when used for this purpose is totally misapplied. The design is to regulate the government of the corporation, not to operate on or affect injuriously the rights of strangers. . . . But in addition to his rights and duties as a corporator, Cornelius Connor stands before us as a party to a covenant executed by himself on the one part and the insurance company (mutual) under its corporate seal on the other. His rights under that covenant are as fully protected by law form the corporate action of the company as if he were a stranger. It affects not his rights under that contract, that by virtue of it, he becomes a member of the company, and, as such, subject.' ''

The above is demonstrative of the fact that in Pennsylvania, regardless of the distinction that the contract of such societies ''within the meaning of the act of 1873'' did not constitute an insurance, still the insurance law governed in respect to the issues presented in that case. Again we conclude that the law as above declared by the Pennsylvania court conforms to the law of Missouri in respect to the issue therein discussed.

Defendant under its points 1B further cites Pennsylvania cases as follows: Wick v. Fraternal Acc. Order, 21 Pa. Sup. 507, 1. c. 509; Myers v. Fritchman, 6 Pa. Sup. 580, 1. c. 582; Acri et al. v. Bruscia et al., 265 Pa. St. Rep. 384; Neff v. Daughters of Liberty, 62 Pa. Sup. 251; Robinson v. Harshaw, 63 Pa. Sup. 483.

The above cases all have under consideration appeal to the tribunal of the society, as provided by its laws. All are to the effect that appeal within the order must be resorted to before suit, and it is held that when a member so appeals and loses and wherein the proceedings were regular and an opportunity for full hearing given, the decision within the society is final.

We conclude, conceded a mutual contract duly entered into contained provisions for such procedure and conceding regular proceedings and full opportunity for hearing, that the law as expressed in the above opinions conforms to the law as it is applied in Missouri. We will, however, discuss the application of such law to the facts of this case when reached in the logical sequence below.

Defendant cites Beeman v. Supreme Lodge Shield of Honor, 215 Pa. St. Rep. 627. In this case, the result reached by the court was based upon the fact that the plaintiff had failed to follow the law of the society by first submitting his claim within the tribunals of

the order. In the course of the opinion, the fact that remittance of dues sent by mail had not reached the home office on the first day of the month (due date) was given consideration by the court, and as a matter of law it is held that failure to have dues in home office on due date worked a suspension of the member. However, questions of waiver are not presented or discussed in the opinion.

The above statement of the law, taken as an abstract proposition, conforms to the law of Missouri as applied to mutual associations wherein such provision is expressed in the contract and no element of waiver is present and no issue of fact as to the timely remittance by mail is involved.

This court in an opinion by BLAND, J., in Schlotzhauer v. Central Mut. Ins. Assn., 128 S. W. (2d) 1061, fully discusses the issues wherein transmission of dues by mail is involved. We find nothing in the Pennsylvania cases, *supra,* that conflicts with the law as declared by this court.

Defendant cites Loyal Orange Institution v. Morrison, 269 Pa. St. 564. This case deals with the question of duty of observance of the laws of the society as a prerequisite to recovery. The issue in above case involved a split in the order and wherein property and funds of the organization were involved as between two factions. We find no special application in the above case to the issues herein, other than as have been discussed above.

None of the Pennsylvania cases cited have in issue, nor attempt to discuss, waiver of forfeiture by retention of dues paid or as based upon reasons for refusal of payment under the contract inconsistent with the position taken in the suit. This fact, coupled with the fact that defendant cites as to its first point Missouri cases consistent with declarations of law as declared in Pennsylvania cases cited, and as to all other points presented, cite Missouri cases without citation of Pennsylvania cases, is inconsistent with defendant's claim under subhead (b) under point No. 1.

Viewing the situation as a whole, we conclude that insofar as the issues before us are concerned, the law of Pennsylvania, as pled and urged and as declared in the cases cited, is not materially different from the law of Missouri. Further, as to those issues involved in this case that are not involved or decided in the Pennsylvania cases, the law of the forum must be applied.

In further support of the above conclusion, the contract between plaintiff and defendant (a foreign corporation not authorized to do business in Missouri) was made in the State of Florida, and most of its provisions carried out in the State of Missouri, where the society has a Terminal President with well defined duties, and a recognized agent for the collection of dues and assessments, with which agent plaintiff is shown to have dealt. Further, it stands admitted that defendant's members solicit business in Missouri.

The members of the defendent society consist of railroad employees. The basis for general membership appears to be twenty-five cents monthly dues. Based upon payment of this twenty-five cents monthly, there is provision for retirement benefit payment at a fixed age.

To members of the society, there is a further benefit provided for a member so injured in the due course of a railroad employment as to be incapacitated so as to lose his job. For the aforesaid benefit, the member must pay an additional sum of $175, and under the laws of the society there is provision that for this benefit the dues must be paid in the home office, on or before the first of the month.

The issue in this case involves alone the provisions above. To be a beneficiary, a member must be engaged in the hazard of railroad employment when injured. It follows that in slack times, or depression, when a member was laid off or engaged in work outside of railroad work, the liability of the society became suspended. It appears from the record that in a suspended period the member was required only to keep up his twenty-five cent membership dues and when he again reported for railroad duty, the payment of the $1.75 placed the member under protection.

As the plaintiff recovered below, we, in review, must give to the plaintiff the most favorable inference from all facts and circumstances in evidence.

It appears that plaintiff, at the solicitation of a national President of defendant corporation, joined the order in the State of Florida in 1924. It is shown that plaintiff, while in regular railroad employment, was seriously injured on March 10, 1934. As a result of aforesaid injuries, plaintiff was placed out of employment on the 31st day of May, 1934. Thereafter, the following communication was sent to defendant.

"Missouri Pacific Railroad Company

"F. T. Mahoney,
  "Terminal Superintendent

"Kansas City, Missouri
"April 26, 1935
"File G-662

"Mr. L. G. Smith, International President
"Brotherhood's Relief and Compensation Fund,
"Sixty and Maclay Streets,
"Harrisburg, Penna.
"Dear Sir:

"Referring to the case of former Switchman Amos S. Calhoon employed at Kansas City, Missouri.

"Mr. Calhoon, on account of his physical condition, has not worked since May 31, 1934, and since our Chief Surgeon has advised that he is totally and permanently disabled for service as switchman or other manual labor, he will not be permitted to work in railroad service.

"You have statement of our Visiting Surgeon, Dr. J. A. Lembeck, as to the cause of Calhoon's disability.

"Yours very truly,
"F. T. Mahoney
"Terminal Superintendent."

The evidence discloses that the plaintiff first showed the above letter to the Kansas City ·Terminal Superintendent of the order and then mailed same directly to the home office, properly stamped and with return address, and that the same was never returned to him. The receipt of this letter is not denied. There are a number of letters in evidence from plaintiff to defendant, and from defendant to plaintiff. From a showing of these letters, in connection with plaintiff's testimony as to his physical condition and hospital confinement, we conclude that the plaintiff made such submission of his case to the tribunals of the order and with such unsatisfactory result as to any final determination therein that justifies his submitting the matter to a court for determination. In none of the letters from defendant to plaintiff does there appear a claim that the defendant was raising the question that plaintiff was in arrears with his dues or suspended.

In the correspondence, the following appears:

"September 26, 1934.

"T-65
"Mr. Amos S. Calhoon,
"42 North Cleveland Ave.
"Kansas City, Missouri
"Dear Sir and Brother:

"We have yours of the 21st instant, sorry to learn of your illness, trust however, that you will have a speedy recovery and that you may soon return to service. I believe that it is your understanding you would be entitled to compensation for Physical Loss of Position, should you be removed from service on account of your afflication.

"May I call your special attention to Article No. 47, section 1, paragraph 'B' of the Constitution. You will discover in this regulation that Physical Disability in this Organization means,

" 'The hand off at the wrist or above.
" 'The foot off at the ankle or above.
" 'One or both eyes out or blinded.
" 'The arm or leg mangled that you would lose the use of same and be removed from further service and the accident that caused this injury, happened while on duty and under pay, then and only then is the member entitled to Physical Loss of Position benefits.'

"I refer you to this regulation in the Constitution in order that you may thoroughly understand what Physical Disability means in this Organization. Again wishing you a speedy recovery, we remain,

"Fraternally yours,
"Brotherhood's Relief & Compensation Fund,
"L. C. Smith
"International President."

Paragraph (b) referred to, is as follows:

"ARTICLE XIVII

"Definitions

"(b)  The term, 'Held out of Service,' as used in this Constitution, shall also include all cases, where an employee of the Motive Power or Transportation Department, while in the actual and authorized performance and furtherance of the duties of his employment, for which he is receiving the usual and stipulated compensation for such authorized services, has been permanently injured and physically disabled by reason of an accident, occurring during said services, resulting directly and undisturbed by any other intervening or independent cause whatsoever,  (1)  in the amputation or severance of the hand at or above the wrist joint, or the amputation or severance of the foot at or above the ankle joint, or  (2)  the complete and permanent loss of the use of one or both hands, or one or both feet, or the sight of one or both eyes, and has been entirely and permanently relieved by his employer from the performance of his said usual duties, because of said physical disability, which, however, did not result from any willful or intentional violation or infraction of any rule or rules, regulation or regulations, of his employer, or any violation or infraction of any Federal or State law, now in force, or hereafter enacted."

The fact that plaintiff's total disability is the result of an injured spinal column does not appear as urged as a defense in briefs filed by defendant.

In several letters from the defendant to plaintiff, delay in making adjustment is laid to the claim of lack of desired information.  Evidently during all of this time the defendant had full knowledge as to whether or not plaintiff by reason of default in payment was suspended and not entitled to benefit, and such fact cannot be the "lack of desired information."

As to the payment of dues, receipts were placed in evidence showing payments from 1932 to July, 1935.  The controversy herein involves the dues for March, 1934, and thereafter.

It appears that for several months prior to March, 1934, plaintiff had paid the so-called honorary dues of twenty-five cents per month, except for December when full payment of $2 was made.  We conclude, from the showing in the record, that these months showing twenty-five cent payments were lay-off months.  As to the payment of March dues, 1934, the plaintiff testifies as follows:

"On or about March 1, 1934, I went to work for the Missouri Pacific.  I went to the bank, got some money and went to the bank to pay the balance, as it shows here.  The bank wouldn't accept it. They instructed me to send it to Harrisburg, Pennsylvania, or give it to the Terminal President.  I went to see the Terminal President.

He instructed me to send it to Harrisburg, Pennsylvania, which I did, and they sent me back this book stamped and wrote across there 'Balanced.' I had already paid the twenty-five cents for this month and they stamped it and wrote on there 'Balanced,' and I sent for two months.''

The receipts for March and April, 1934, are in evidence and corroborate plaintiff's aforesaid testimony. Receipts show that from and after April, 1934, to December, 1935, plaintiff paid and was receipted for payments of $2 per month. These receipts are conclusive to the effect that defendant accepted full dues of $2 per month from plaintiff for March and April, 1924, and thereafter.

The defendant neither before or at the trial tendered or offered to tender back these dues so paid and received.

We have had occasion to say, and when a mutual benefit association was helped thereby, that a judicial opinion must not abrogate the meaning of mutual in construing a mutual contract. We take occasion here to say that, the character of the founder of the great State of Pennsylvania, and its City of Brotherly Love in mind, that the word ''Brotherhood'' should be interpreted in harmony with mutual.

Waiver by acts and conduct is applicable to mutual fraternal societies. Further, under the laws of this State, fraternal mutual associations cannot accept and retain dues and premiums from its members as though they were in good standing, and then defend by claim of forfeiture of rights based upon failure of promptness of payment by the member. [Bennot v. Grand Lodge Brotherhood of R. R. Trainmen, 81 S. W. (2d) 360.]

We conclude that if necessary in this case, we would be justified in applying harsh doctrine and treating the contract of this foreign corporation, with its Terminal President directing its affairs in one of our great railroad terminals and with its agency for collecting money from our citizens, as an old-line insurance contract.

Under the facts and circumstances as shown by the record in this case, we feel that defendant cannot complain if we apply the beneficent laws of the State governing mutual benefit societies authorized to do business in this State. Further, giving application of the general law of contracts, the evidence in this case affords ample premises to a conclusion that a case was made for the jury.

Judged by any of the standards above discussed, we conclude that the refusing of a peremptory instruction in defendant's favor was not error.

Error is charged as to instructions Nos. 1 and 2, given on behalf of plaintiff. As to Instruction No. 1, defendant urges:

''This instruction, though it porports to cover the entire case and authorize a verdict for plaintiff, does not require the jury to find certain facts necessary to plaintiff's right of recovery, namely, that the plaintiff, at the time of his alleged injury, was employed in the

transportation department of a railroad company and that his physical disability was not due to any wilful or intentional violation or infraction of any rule or regulation of his employer.''

There is no evidence shown in the records herein that tends to support any claim of any intentional or willful violation of rules. Further, the defendant is not shown to have raised any question as to same in the trial, and offered no instruction on such matter.

From an examination of the instruction, no error on above ground is shown for the reason that even though the jury assumed, as to matters pointed out, in plaintiff's favor, same is shown to be true by all the evidence in the case. [Hill v. St. Louis Pub. Service Co., 65 S. W. (2d) 633.]

Even if technical error could be claimed, the facts and circumstances in evidence would render same harmless.

Further, contention is made as follows:

''This instruction is erroneous for the reason that it entirely ignores the defense of the nonpayment of beneficial dues by the plaintiff on or before the last day of February, 1934, for the month of March, 1934.''

In answer to above, we refer to our discussion, *supra*, as to waiver. We conclude that Instruction No. 1 presents no reversible error.

Defendant urges error in plaintiff's Instruction No. 2, as follows:

''This instruction is broader than the pleadings and is not within the purview of the evidence. This instruction authorized the jury to find that the defendant waived the timely payment by plaintiff of his March, 1934, dues if the jury found that defendant did not offer to return such dues when no such issue was presented by the pleadings and when there was no evidence as to whether or not the defendant offered to return such dues.''

In answer to above, the duty devolved upon the defendant to return the dues collected before it could urge forfeiture. The dues are clearly shown as received and receipted for. Such situation placed a burden upon defendant. Citations by defendant on above claim of error are not in point.

Defendant further contends:

''The substantive rights and liabilities, if any, of the parties become fixed on March 10, 1934, the date of plaintiff's injury and could not be changed by subsequent acts of either party on the theory of waiver. A cause of action cannot be based on waiver.''

Defendant overlooks the fact that plaintiff's suit is based upon the contract and that the question of waiver only goes to the question of dues. In other words, by its own acts and conduct defendant is precluded from urging forfeiture after having accepted payment and retaining money so paid.

Defendant further urges:

''This instruction is misleading, confusing and ambiguous because it fails to distinguish beneficial dues and non-beneficial dues, the

payment of which were provided for in defendant's constitution, and when the payment of non-beneficial or 'honorary' dues only would not entitle plaintiff to any benefits."

The question of the payment of the twenty-five cent per month dues, designated as "honorary" dues, is not in issue, and we see no reason for such distinguishment in the instruction.

In some points presented by defendant are matters that appear as never having been presented to the trial court. Appellate courts cannot convict a trial judge of error on matters not called to his attention.

Defendant cites copious Missouri authorities under its points Nos. 2 and 3. As we conclude same are not in point on the issues herein, we do not feel justified in burdening this opinion with a detailed discussion of same.

Careful examination convinces us that there was a fair and impartial trial below with no reversible error shown and that the verdict and judgment was for the right party.

Judgment affirmed. All concur.